ELVERS et al. v. W. R. GRACE & CO.

(District Court, N. D. California, First Division. May 17, 1915.)

No. 13980.

SHIPPING ☞173—CONSTRUCTION OF CHARTER PARTY—CESSER CLAUSE.

 A charter party provided that the charterers should pay demurrage for delay through their fault in loading or discharging beyond the lay days allowed, but by a cesser clause it was further provided that the ship should have a lien on the cargo for all freight, dead freight, and demurrage, and that "all and any liability of the charterers * * * shall cease and determine as soon as the cargo is on board, all questions, whether of demurrage or otherwise, to be settled with the consignees, the owners and captain looking to their lien on the cargo for this purpose." *Held* that, in the absence of any provision showing that the lien given was not commensurate with the liability of the charterers, such clause was valid and enforceable, and that a suit in personam could not be maintained against the charterers for demurrage because of delay in loading.

 [Ed. Note.—For other cases, see Shipping, Cent. Dig. § 570; Dec. Dig. ☞173.]

In Admiralty. Suit by Martin H. A. Elvers and Frederic A. Zimmer against W. R. Grace & Co., a corporation. On exceptions to amended libel. Sustained.

Andros & Hengstler and G. W. Bell, all of San Francisco, Cal., for libelants.

Nathan H. Frank and Irving H. Frank, both of San Francisco, Cal., for respondent.

DOOLING, District Judge. This is an action on the part of the shipowners against the charterers for demurrage at the port of loading. The charter contains the following provisions:

"For each and every day's detention by the fault of party of the second part (charterers) or agents, they agree to pay to said party of the first part demurrage at the rate of three pence sterling per register ton per day."

"Bills of lading to be signed for pieces with the clause 'All on board to be delivered,' and at any rate of freight shippers may desire without prejudice to this charter; but if at a lower rate than provided in charter, difference to be paid in cash at port of loading, less commission, interest, and insurance."

"Vessel to have a lien on cargo for all freight, dead freight and demurrage, it being understood that all and any liability of the charterers under this agreement shall cease and determine as soon as the cargo is on board; all questions, whether of demurrage or otherwise, to be settled with the consignees, the owners and captain looking to their lien on the cargo for this purpose."

The provision for the payment of demurrage by the charterers applied alike to delays in loading and delays in discharging.

As the libel is against the charterers in personam, exceptions have been filed to it, on the ground that it states no cause of action against respondents, the charterers, because of the cesser clause in the charter, but that libelants' only remedy is an action in rem against the cargo. The action was, however, fully tried, and these exceptions are taken to an amended libel, filed at or about the close of the trial. Similar exceptions taken to the original libel were overruled by the former

judge of this court. The high regard which I have for the late Judge De Haven's learning has caused me to hesitate long before deciding that the exceptions to the amended libel are well taken. But a careful study of the English and American cases in which the effect of so-called "cesser clauses" has been passed upon, has led me to the conclusion that under the provisions of this charter the cesser clause is effective.

In the first place, there is nothing in the nature of the subject-matter which would prevent the parties from entering into any agreement satisfactory to themselves concerning the question of demurrage. The charter party might well have provided that no demurrage at all should be charged for delay, or it might provide, as here, that demurrage should be paid, but that after the ship was laden the owner should be given, a lien upon the cargo, and should look to it for the purpose of securing such payment, and that:

"All and any liability of the charterers under the charter shall cease and determine as soon as the cargo is on board."

If there be nothing in the charter itself which renders it impossible, or even difficult, for the ship to secure and enforce the lien upon the cargo which the charter gives, and such lien would be commensurate with the liability of the charterers for demurrage, there is no reason why an admiralty court should not hold the parties to the contract which they have made. There does not seem to me to be any question of public policy involved which would prevent the enforcement of the contract as it is written, or permit its enforcement otherwise than as written. It is, after all, only the construction of the whole charter that is here involved. An early clause in the charter provides for the payment by charterers of demurrage for delays through their fault, either in loading or discharging the vessel, beyond the lay days allowed for such purpose. A later clause declares:

"Vessel to have a lien on cargo for all freight, dead freight and demurrage, it being understood that all and any liability of the charterers under this agreement shall cease and determine as soon as the cargo is on board; all questions, whether of demurrage or otherwise, to be settled with the consignees, the owners and captain looking to their lien on the cargo for this purpose."

Is the lien here created commensurate with the liability of the charterers provided for in the antecedent clause? I cannot escape the belief that it is so commensurate with the charterers' liability, unless there be some other provision of the charter which permits the charterers to destroy or render valueless the lien so created. I find no such provision. In Clink v. Radford, 1 Q. B. 625, it was said by one of the judges:

"In my opinion, the main rule to be derived from the cases as to the interpretation of the cesser clause in a charter party is that the court will construe it as inapplicable to the particular breach complained of, if by construing it otherwise the shipowner would be left unprotected in respect of that particular breach, unless the cesser clause is expressed in terms that prohibit such a conclusion. In other words, it cannot be assumed that the shipowner, without any mercantile reason, would give up by the cesser clause rights which he had stipulated for in another part of the contract."

Another one said:

"There is no doubt that the parties may, if they choose, so frame the clause as to emancipate the charterer from any specified liability, without providing for any terms of compensation to the shipowner; but such a contract would not be one we should expect to see in a commercial transaction. The cesser clauses, as they generally come before the courts, are clauses which couple or link the provisions for the cesser of the charterer's liability with a corresponding creation of a lien. There is a principle of reason which is obvious to commercial minds, and which should be borne in mind in considering a cesser clause so framed, namely, that reasonable persons would regard the lien given as an equivalent for the release of responsibility, which the cesser clause in its earlier part creates, and one would expect to find the lien commensurate with the release of liability."

And a third added:

"The rule that we are prima facie to apply to the construction of a cesser clause followed by a lien clause appears to me to be well ascertained. That rule seems a most rational one, and it is simply this: That the two are to be read, if possible, as coextensive. If that were not so, we should have this extraordinary result: There would be a clause in the charter party the breach of which would create a legal liability, there would then be a cesser clause destroying that liability, and there would then come a lien clause which did not re-create that liability in anybody else."

And in a later case (Hansen v. Harrold, 1 Q. B. 617), speaking of the foregoing, it is said:

"It seems to me that this reasoning has not been and cannot be answered. Therefore the proposition is true that, where the provision for cesser of liability is accompanied by the stipulation as to lien, then the cesser of liability is not to apply in so far as the lien, which by the charter party the charterers are able to create, is not equivalent to the liability of the charterers. Where, in such a case, the provisions of the charter party enable the charterers to make such terms with the shippers that the lien which is created is not commensurate with the liability of the charterers under the charter party, then the cesser clause will only apply so far as the lien which can be exercised by the shipowner is commensurate with such liability."

The Supreme Court in Crossman v. Burrill, 179 U. S. 100, 21 Sup. Ct. 38, 45 L. Ed. 106, quoting the foregoing, laid down the following as the true rule:

"In short, in a charter party which contains a clause for cesser of the liability of the charterers, coupled with a clause creating a lien in favor of the shipowner, the cesser clause is to be construed, if possible, as inapplicable to a liability with which the lien is not commensurate."

The court held the clause of the charter there under consideration to be ineffective, because the lien created by the charter was not commensurate with the charterer's liability. But in that case the charter contained also the further provision, "Bills of lading to be signed as presented, without prejudice to this charter," and as the bills of lading as presented contained no reference to the payment of demurrage, nor any reference to the terms of the charter other than those concerning freight and average, the court held that the indorsees of the bills of lading were not bound by the charter provisions giving the vessel a lien upon the cargo for demurrage, and that the rights of the shipowners against the indorsees depended altogether upon the contract created by the bills of lading, except so far as that contract referred

to the charter party. It seems to me that the provision, "bills of lading to be signed *as presented,*" and the presentation of such bills containing no provision for the payment of demurrage, made a case such as is mentioned in Hansen v. Harrold, supra:

"Where, in such case, the provisions of the charter party enable the charterers to make such terms with the shippers that the lien which is created is not commensurate with the liability of the charterers under the charter party, then the cesser clause will only apply so far as the lien which can be exercised by the shipowner is commensurate with such liability."

In the case at bar, however, there is no provision in the charter party which would enable the charterers to make such terms with the shippers, or with the owners, as would render the lien created by the charter at all uncommensurate with the charterers' liability for demurrage, either at the port of loading or at the port of discharge.

There is nothing in this charter party which would prevent the master from preserving in the bill of lading the lien given by the charter for "all freight, dead freight and demurrage." The fact that he did not do so seems to me to be a false quantity, tending only to confuse the real question, which is the construction of the charter party itself. For otherwise, even if it were conceded that this charter party does absolve the charterers from the payment of demurrage, the master could defeat this absolution by failing to preserve the lien in the bill of lading. But the charter party is an instrument complete in itself, and when the parties thereto enter into certain agreements, it should not be in the power of the master to render any of those agreements abortive through the medium of a bill of lading. If the charter party itself and within its own four corners has the effect of rendering the lien created by it uncommensurate with the liability of the charterers under a stipulation for demurrage, then a cesser clause in such charter party will not absolve the charterers from such liability. But if the charter party itself gives a lien commensurate with the charterers' liability, the cesser clause will be given the full effect which its terms require. And this seems to me to be the only conclusion to be drawn from the adjudicated cases both English and American.

Many of these cases give to the cesser clause full efficacy as absolving the charterers from all liability, whether incurred at the port of loading or at the port of discharge. Others make this clause only effective as to liabilities accruing at the port of discharge, holding the charterers responsible for all liability incurred before the cargo is fully on board. Still others give no effect whatever to the cesser clause, for the reason that the court finds that the lien given by the charter is not commensurate with the liability of the charterers also created thereby. But in all the cases these various conclusions result from the consideration and construction of particular charter parties, according to the terms used in creating the liability, in providing for its cessation, and in creating the lien in lieu thereof.

It is a vexed and perplexing question, but, taking all the terms of the charter party under consideration here, I am of the opinion that the reasonable construction requires that effect be given to the cesser clause, and that the remedy of the libelants is not, under the charter,

"by action against the charterers at all on the charter, after the ship is fully loaded, but that they are to have as a remedy for their freight, dead freight and demurrage, nothing but a lien on the cargo." Sanguinetti v. Pacific Steam Navigation Co., L. R. 2 Q. B. D. 238.

The exceptions to the amended libel are therefore sustained.